UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| AMY STEENMEYER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE BOEING COMPANY,<br><br>　　　　　　Defendant. | CASE NO. C13-2184 MJP<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant The Boeing Company's ("Boeing's") Motion for Summary Judgment. (Dkt. No. 21.) Having considered the Motion, Plaintiff Amy Steenmeyer's Response (Dkt. No. 23), Boeing's Reply (Dkt. No. 26), and all related papers, the Court hereby DENIES the Motion.

## Background

Ms. Steenmeyer was hired into a permanent project manager position at Boeing in December 2011, after she had worked as a Boeing contractor for about six years. (Oraze Dep., Dkt. No. 21-2, Ex. A at 47:15–20; see Steenmeyer Dep., Dkt. No. 24-1, Ex. A at 117–135.) Ms. Steenmeyer's most recent contract position was under the supervision of Mr. Oraze, and he was

1  also the person to hire her on a permanent basis. (Oraze Dep., Dkt. No. 24-1, Ex. B at 34:14–25,

2  35:1–4, 39:8–10.) The contract position under Mr. Oraze did not require her to work away from

3  the Everett work site, though she had been required to travel to sites within the Seattle metro area

4  during previous stints as a contractor. (Oraze Dep., Dkt. No. 24-1, Ex. B at 46:15–19;

5  Steenmeyer Dep., Dkt. No. 24-1, Ex. A at 120:25–125:8.) She was not required to work away

6  from the Everett site as an employee. (Id. at 48:4–10.)

7        Ms. Steenmeyer had been seated in Row 1 of the workspace (the closest row to the

8  restroom) during much of the time she worked under Mr. Oraze, including the months of

9  September 2011, February, April, and May of 2012. (Steenmeyer Decl., Dkt. No. 25 at 2.) Ms.

10  Steenmeyer believed her desk in Row 1 to be less than 30 seconds from the restroom. (Id.) On

11  May 3, 2012, Mr. Oraze asked Ms. Steenmeyer to move to Row 3, farther from the restroom, to

12  be seated near coworkers. (See Dkt. No. 22-4, Ex. R at 42.) She objected to the move by voicing

13  concerns about those coworkers rather than referring to medical issues. (Id.) Mr. Oraze

14  accommodated her request to stay in Row 1 at that time. (Id.)

15        Tensions flared between Ms. Steenmeyer and Mr. Oraze after he found out on May 8,

16  2012, that she had applied for another position at Boeing under a different supervisor. (See Oraze

17  Dep. Dkt. No. 22-1 at 56:8–57:14; Steenmeyer Dep., Dkt. No. 22-1 at 194:3–10.)

18        During the month of June, Mr. Oraze required Ms. Steenmeyer to move to Row 3 by the

19  beginning of July. (See Dkt. No. 22-4, Ex. S.) She again protested, referring to conflicts with

20  coworkers, but was overruled. (Id.)

21        On July 18, Mr. Oraze gave Ms. Steenmeyer a negative performance review. (See Dkt.

22  No. 22-4, Ex. R.)

23

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 2

On July 26, she asked to be moved back to Row 1, citing its closer distance from the restroom. (See Steenmeyer Decl., Dkt. No. 25 at 2.) Although this may have been the first time Ms. Steenmeyer requested an accommodation for a specific medical condition, Defendant Boeing concedes that she had a ten-year history of chronic urinary tract infections. (Dkt. No. 21 at 6; see Dkt. No. 25 at 2.) In addition, Mr. Oraze had been made aware of at least one prior "bladder issue" in February 2012 that had disrupted Ms. Steenmeyer's workday. (Dkt. No. 24-3, Ex. J at 25.) Ms. Steenmeyer's first request for an accommodation was accompanied by a health care provider's note that stated "Due to serious medical condition patient requires frequent visits to the bathroom and needs to be seated near the bathroom." (Dkt. No. 22-5, Ex. W at 2.)

Mr. Cannistraci, a physician's assistant with Boeing Medical, found the note to be ambiguous and requested additional documentation from Ms. Steenmeyer's health care provider. (See Cannistraci Dep., Dkt. No. 22-2, Ex. F at 32:22–44:7.) Specifically, he sought information about the frequency of the need to urinate and within what distance from the restroom her seat should be located. (See id. at 45:7–23.) Ms. Steenmeyer then provided Boeing with a "Reasonable Accommodation and Health Care Provider Information Form" on Boeing letterhead which noted, "Patient needs to be within 30 seconds of the bathroom + needs to urinate every hour to prevent future urinary tract infections." (Dkt. No. 24-3, Ex. N at 33.) Boeing points out that Ms. Steenmeyer had suggested the 30-second limitation to her health care provider. (Dkt. No. 21 at 7; Dkt. No. 22-2, Ex. E at 37:15–21.)

The reasonable accommodation process at Boeing segregates the medical restriction and the people implementing the restriction from the medical records supporting the restriction and medical staff familiar with those records. (See Lashua Dep., Dkt. No. 22-3, Ex. G at 30:4-31:25.) Here, the information that reached the Disability Management Representative and

1  Reasonable Accommodation Focal, Katie Lashua, substituted the phrase "work location needs to

2  be within 30 seconds of bathroom" for Ms. Steenmeyer's medical provider's original phrase

3  "needs to be seated near the bathroom." (See Boeing Injury & Illness Report, Dkt. No. 22-5, Ex.

4  CC ("Work location needs to be within 30 seconds of bathroom. Employee needs bathroom

5  break every hour.").) Although "work location" is arguably ambiguous, Ms. Lashua and Mr.

6  Oraze both initially assumed the phrase meant the placement of Ms. Steenmeyer's desk. (See

7  Dkt. No. 24-2, Ex. D at 75:7–10; Dkt. No. 24-1, Ex. B at 135:2–14.)

8         After receiving Mr. Cannistraci's written restriction, Ms. Lashua met with Ms.

9  Steenmeyer and Vocational Rehabilitation Counselor Ken Eriksen, and helped Ms. Steenmeyer

10 to move temporarily back to Row 1. (See Dkt. No. 22-5, Ex. AA at 19; Dkt. No. 24-2, Ex. D at

11 65:7–66:18.) The move was temporary because Mr. Oraze was on vacation. (Steenmeyer Decl.,

12 Dkt. No. 25 at 3; Dkt. No. 22-5, Ex. AA at 19–21.)

13        Upon Mr. Oraze's return, a meeting between Ms. Steenmeyer, Ms. Lashua, Mr. Oraze,

14 Mr. Eriksen, and human resources representative Carol Hawthorne was convened. (Dkt. No. 22-

15 5, Ex. AA at 22.) Mr. Oraze objected to Ms. Steenmeyer being moved to Row 1 and indicated

16 the reason she was placed in Row 3 was not related to her medical condition. (Dkt. No. 24-1, Ex.

17 B at 111:11–112:18; Dkt. No. 22-5, Ex. AA at 22.) Ms. Steenmeyer then ended the meeting and

18 asked for a union representative to be present at the next meeting. (Dkt. No. 22-5, Ex. A at 22.)

19        The next meeting took place on September 6, 2012, with Ms. Steenmeyer, Ms. Lashua,

20 Mr. Oraze, Ms. Hawthorne, Mr. Eriksen, and union representative Bob Weiss present. (Dkt. No.

21 22-5, Ex. AA at 26.) At the meeting, Ms. Lashua, Mr. Eriksen, and others decided that Mr.

22 Eriksen would conduct a time study investigating the relative distances between Ms.

23 Steenmeyer's potential desk locations and the restroom. (Id.; Dkt. No. 24-2, Ex. E at 38:11–16.)

24

On September 11, 2012, Mr. Oraze wrote Ms. Lashua an email in which he proposed a more literal interpretation of the 30-second "work location" restriction and argued that Ms. Steenmeyer would not be able to perform her job at all with the restriction in place:

From: Oraze, Paul A

Sent: Tuesday, September 11, 2012 1:38 PM

To: Lashua, Katie J

Cc: EXT-Eriksen, Kenneth G, Hawthorne, Carol R

Subject: Help needed clarifying restriction

Hello Katie, I am in a quandary as to what I can or cannot do as far as assigning Amy Steenmeyer SOW. Does the restriction state that Amy's job assignment cannot put her outside of 30 seconds from a bathroom ever? In the meeting she stated that the current temporary seat works because all she is doing is providing visibility. That is only aprox [sic] 5% of her job. When she walked off the job unannounced I had to assign her customer and work package to another Engineering PM. Now she is requesting why she is no longer responsible for that work package. The job requires the PM to learn the engineering teams [sic] business, support meetings and at times travel to the suppliers [sic] site. The job cannot be performed successfully if you can't be outside of 30 seconds from a restroom. Also, I need to continue having discussions on how to reverse her poor performance prior to the restriction, but if I am violating her restriction by trying to get her to perform her current job, I should not have the discussion until I know what I can have her do. I really need help understanding what I can do as far as assigning her work. I

1 do not have a position, nor do I know of a job where she can work that is 30 sec [sic] or

2 less from a restroom. You have to be able to support the customer.

3

4 For the time study:

5 Her temporary desk is 2015-1.6

6 Her assigned desk is 2813-2.9

7 (Dkt. No. 22-5, Ex. DD at 67.)

8 The email prompted Ms. Lashua to clarify the restriction with Sue Bloom, Disability

9 Nurse Consultant for Boeing Medical, on September 12. (See Dkt. No. 22-5, Ex. AA at 27; Dkt

10 No. 22-5, Ex. DD at 67.) Ms. Bloom, interpreting Mr. Cannistraci's written restriction rigidly

11 and consulting no other sources, told Ms. Lashua that Ms. Steenmeyer needed to be within 30

12 seconds of a restroom at all times. (See Bloom Decl., Dkt. No. 22-3, Ex. H at 33:20–53:6.) Ms.

13 Lashua testified at her deposition that "[t]he restriction to The Boeing Company is black and

14 white, that she was not to be greater than 30 seconds." (Dkt. No. 24-2, Ex. D at 108:22–24.)

15 Mr. Eriksen and an assistant conducted the planned time study on September 13,

16 measuring the time between Ms. Steenmeyer's temporary desk in Row 1 and the restroom. The

17 time needed to travel this distance was measured at thirty-two seconds. (See Dkt. No. 24-2, Ex. E

18 at 39:4–40:17.)

19 On September 14, 2012, a telephone call between Ms. Lashua, Mr. Oraze, Ms.

20 Hawthorne, Mr. Eriksen, and another individual reviewed the results of the time study. (See Dkt.

21 No. 22-5, Ex. AA at 28.) Mr. Oraze then stated for the first time that domestic and international

22 travel was necessary for Ms. Steenmeyer's position. (Id.) Another concern raised on this call was

23 that meetings would take Ms. Steenmeyer out of the thirty-second range of the restroom. (Id.) At

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT- 6

1  her deposition, Ms. Lashua agreed that she concluded from the time study that Ms. Steenmeyer

2  could not be accommodated within her medical restriction. (Dkt. No. 24-2, Ex. D at 105:5–18.) It

3  did not matter to Ms. Lashua whether Ms. Steenmeyer felt that two seconds by which her

4  temporary desk location exceeded the medical restriction made any difference. (Id. at 105:22–

5  25.)

6        On September 19, a second meeting was held with Ms. Steenmeyer in attendance. (Dkt.

7  No. 22-5, Ex. AA at 28.) Although Ms. Lashua's notes in a document labeled History Detail

8  Report reflect that Ms. Steenmeyer was reacting positively to her temporary desk location, Ms.

9  Steenmeyer was nonetheless informed that she was being placed on leave because she was not

10  able to perform her job with the medical restriction. (Id.) She later learned from an insurance

11  provider that the leave would be unpaid. (Dkt. No. 24-3, Ex. U at 63.)

12        Ms. Steenmeyer returned to her health care provider on September 21 to have the

13  restriction broadened to "within 30 sec – 1 minute to bathroom." (See Dkt. No. 24-3, Ex. Q at

14  46.) The form also clarified that "[u]sually after she empties her bladder she can be comfortable

15  up to one hour." (Id.)

16        Boeing nonetheless continued to interpret the restriction rigidly and determined that she

17  could not be accommodated in her current position even with a 60-second restriction;

18  nonetheless, it began the medical reassignment process searching for any other position in which

19  she could be accommodated. (See Dkt. No. 22-5, Ex. AA at 36.)

20        The record is unclear as to the date, but Mr. Eriksen eventually completed a Reasonable

21  Accommodation Review Form which stated in part "It should be noted that the employee has

22  indicated that she interprets work location to mean that the location of her desk needs to be

23  within [60] seconds of a restroom. With that accommodation, and a restroom break every hour,

24

1  she has indicated that she things she can perform her [job] requirements. It seems reasonable that
2  the employee would be able to arrange her schedule to allow for a restroom break every hour,
3  while [ ] Everett site and while working at supplier sites. It would need to be determined
4  whether this could be assured while she is traveling to and [from] supplier sites." (Dkt. No. 24-3,
5  Ex. R at 50; Eriksen Dep., Dkt. No. 24-2, Ex. E at 71:22–73:21.) Mr. Eriksen's opinion did not
6  change Boeing's interpretation restricting Ms. Steenmeyer to work within 60 seconds of a
7  restroom at all times.
8       Ms. Steenmeyer entered counseling in August 2012, allegedly to cope with her treatment
9  by Boeing during the accommodation process. (See Dkt. No. 24-2, Ex. G at 25:2–13; Dkt. No.
10 25 at 3–4.) Months later, her psychologist recommended that she terminate the reassignment
11 process and not attend an interview Boeing had scheduled for her pursuant to the medical
12 reassignment process. (See Dkt. No. 25 at 4; Dkt. No. 24-3, Ex. AA at 79.)
13      Boeing now moves for summary judgment on Ms. Steenmeyer's claims for intentional
14 discrimination, failure to accommodate, and retaliation under the Americans with Disabilities
15 Act and the Washington Law Against Discrimination.

16                                   **Discussion**

17      I.     Legal Standard

18      Federal Rule 56(a) provides that the court shall grant summary judgment if the movant
19 shows that there is no genuine dispute as to any material fact and the movant is entitled to
20 judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a factual dispute
21 requiring trial exists, the court must view the record in the light most favorable to the
22 nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). All material facts
23
24

1 | alleged by the nonmoving party are assumed to be true, and all inferences must be drawn in that

2 | party's favor. Davis v. Team Elec. Co., 520 F.3d 1080, 1088 (9th Cir. 2008).

3 |      A dispute about a material fact is "genuine" only if "the evidence is such that a

4 | reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

5 | There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational

6 | trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

7 | 475 U.S. 574, 587 (1986).

8 |      II.     Qualified Individual under the ADA

9 |      Boeing argues that Ms. Steenmeyer is not a "qualified individual" within the meaning of

10 | the ADA because she is unwilling to return to Boeing in any capacity. (Dkt. No. 21 at 16.) The

11 | ADA prohibits discrimination against "a qualified individual" on the basis of disability. 42

12 | U.S.C. § 12112(a). Ms. Steenmeyer bears the burden of proving she is a "qualified individual

13 | with a disability," defined as "a person who, with or without reasonable accommodation, can

14 | perform the essential functions of her job." Weyer v. Twentieth Century Fox Film Co., 198 F.3d

15 | 1104, 1108 (9th Cir. 2000) (internal quotation marks and citations omitted). The determination is

16 | made at the time of the adverse employment decision. (Id. at 1112.)

17 |      Viewing the evidence in the light most favorable to Ms. Steenmeyer, the Court notes that

18 | the Boeing employee assigned to review Ms. Steenmeyer's accommodation request process

19 | found it "reasonable" that she would be able to perform most or all of her work within her

20 | medical restrictions at the time she was placed on the primary alleged adverse employment

21 | action, an unpaid leave of absence. (Dkt. No. 24-3, Ex. R at 50.) The out-of-circuit case cited by

22 | Boeing discusses an employee whose stress-based reaction to her supervisor did not render her

23 | disabled. See Weiler v. Household Finance Corp., 101 F.3d 519, 523, 524 (7th Cir. 1996). In the

24 |

1 panel's opinion, the psychotherapist's judgment that the employee could not work for her
2 supervisor was based on the original stress-based reaction to the supervisor, rather than, as in Ms.
3 Steenmeyer's case, a later reaction to the alleged discrimination by Boeing on the basis of a
4 physical disability. (See id. at 524.)

5 Ms. Steenmeyer is not rendered unqualified under the ADA merely because her
6 psychologist recommended that she not work for Boeing months after the primary alleged
7 adverse employment action occurs.

8     III.    Interactive Process under the Failure to Accommodate Claims

9 Boeing next argues that Ms. Steenmeyer may not prevail because Boeing fulfilled its
10 obligations in the interactive process and Ms. Steenmeyer cut short the process. (Dkt. No. 21 at
11 17.) A prima facie case for failure to accommodate under both the ADA and WLAD requires a
12 plaintiff to show that (1) she is disabled; (2) she is qualified for the job in question and capable
13 of performing it with reasonable accommodation; (3) the employer had notice of her disability;
14 and (4) the employer failed to reasonably accommodate her disability. McDaniels v. Group
15 Health Co-op, No. C13-1689-JLR, 2014 WL 5471991, *11 (W.D. Wash. Oct. 29, 2014) (citing
16 Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012); Zivkovic v. S.
17 Cal. Edison Co., 302 F.3d 1080, 1088–89 (9th Cir. 2002); Davis v. Microsoft Corp., 149 Wn.2d
18 521, 532 (2003)). If an employee identifies a disability that may require accommodation, the
19 employer has a mandatory duty under the ADA to engage in a good faith interactive process of
20 identifying essential and nonessential job tasks and possible accommodations, assessing the
21 reasonableness and effectiveness of the accommodations, and implementing the accommodation
22 most appropriate for the employee and employer that does not impose an undue hardship on the
23 employer. Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1114 (9th Cir. 2000), vacated in part on other
24

grounds by 535 U.S. 391 (2002). The employee's expressed preference as to accommodation must be taken into consideration. Id.

In order to make the argument that it fulfilled its obligations in the interactive process, Boeing persists in interpreting Ms. Steenmeyer's medical restriction as needing to be within 60 seconds of a restroom at all times—an interpretation which is called into doubt by a number of documents in the record as well as the employee's documented preference. (See id. at 18–19; cf. Dkt. No. 24-3, Ex. R at 50; Dkt. No. 24-3, Ex. V at 65.) Boeing further argues that to the extent Ms. Steenmeyer felt that its interpretation was in error, it was her obligation to obtain a clarification from her health provider. (Id. at 21.) Because a plain reading of the actual requests for accommodation written by Ms. Steenmeyer's health care provider and submitted to Boeing Medical do not compel Boeing's rigid interpretation, the case Boeing cites in which the plaintiff was limited by a letter from his personal physician to a "desk job" but sought a position which was indisputably not a "desk job" is inapposite. See Allen v. Pacific Bell, 348 F.3d 1113, 1115 (9th Cir. 2003). Boeing is not entitled to summary judgment on the basis that it fulfilled its obligations under the interactive process.

IV.   Adverse Action and Pretext under the Discrimination Claims

Boeing also argues that Ms. Steenmeyer's discrimination claims fail for lack of an adverse action and pretext. (Dkt. No. 21 at 23.) Plaintiffs in ADA cases may elect to oppose summary judgment by using the "motivating factor" test for intentional discrimination in which pretext is not at issue. See Dominguez-Curry v. Nevada Transp. Dept., 424 F. 3d 1027, 1037 (9th Cir. 2005); Head v. Glacier Northwest Inc., 413 F.3d 1053, 1065 & n.67 (9th Cir. 2005). The Court therefore does not reach a decision on whether Ms. Steenmeyer has put forth sufficient evidence of pretext.

1    As to adverse action, Boeing argues that placing Ms. Steenmeyer on unpaid leave cannot
2 constitute an adverse action because it may constitute a reasonable accommodation. (See Dkt.
3 No. 21 at 24.) The fact that unpaid leave may, in certain circumstances and where requested,
4 constitute a reasonable accommodation does not mean that it cannot also be an adverse action,
5 particularly where the employee is placed on unpaid leave involuntarily. See Maya v. Lepino
6 Foods, No. 1:12–cv–1479 AWI GSA, 2014 WL 1091251, *23 (E.D. Cal. March 18, 2014).

7    V.    Protected Conduct and Adverse Action under Retaliation Claims

8    Finally, Boeing argues Ms. Steenmeyer's retaliation claims fail for lack of protected
9 activity and lack of adverse action. To establish a prima facie case of retaliation under the ADA
10 or WLAD, a plaintiff must show (1) that he or she engaged in or was engaging in activity
11 protected by the ADA or WLAD, (2) the employer subjected him or her to an adverse
12 employment decision, and (3) that there was a causal link between the protected activity and the
13 employer's action. Barnett, 228 F.3d at 1121; see Coville v. Cobarc Services, Inc., 73 Wn.App.
14 433, 439 (1994). Making a request for an accommodation is a protected activity. See Coons v.
15 Secretary of U.S. Dept. of Treasury, 383 F.3d 879, 887 (9th Cir. 2004). Ms. Steenmeyer has also
16 pointed to facts in the record suggesting that Boeing responded to her request for accommodation
17 by interpreting her medical restriction and her job requirements in an increasingly constrictive
18 and expansive manner, respectively, that foreclosed her opportunity to work in her current or any
19 similar position.

20    Ms. Steenmeyer has also introduced genuine issues of material fact as to whether her
21 failure to appear for an interview and ultimate medical discharge should be considered a
22 constructive discharge that qualifies as an adverse employment decision. Constructive discharge
23 is "an employee's reasonable decision to resign because of unendurable working conditions."
24

1  Penn. State Police v. Suders, 542 U.S. 129, 141 (2004). A jury may conclude that Boeing's

2  alleged accommodation process, increasingly stringent interpretation of Ms. Steenmeyer's

3  medical restriction, and prolonged period of unpaid leave was not endurable by a reasonable

4  employee.

**Conclusion**

6  Because Ms. Steenmeyer has demonstrated genuine issues of material fact that preclude

7  summary judgment for Boeing on each of her claims, Boeing's Motion for Summary Judgment

8  is DENIED.

10  The clerk is ordered to provide copies of this order to all counsel.

11  Dated this 12th day of March, 2015.

*[signature]*

Marsha J. Pechman
Chief United States District Judge